IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

---

IN RE: §
ANTELOPE TECHNOLOGIES, INC., § CASE NO. 07-31159-H3-11
§
        Debtor. §

---

ANTELOPE TECHNOLOGIES, INC., §
§
        Debtor-Appellant, §
§
v. § CIVIL ACTION NO. H-10-0205
§
JANIS LOWE and ALAN TAYLOR, §
§
        Appellees. §

### MEMORANDUM OPINION AND ORDER

Debtor-Appellant, Antelope Technologies, Inc. (Antelope), appeals the Bankruptcy Court's January 7, 2010, Judgment, dismissing the above-captioned Chapter 11 case.[1]  Pending before the court is the Brief of Debtor-Appellant (Docket Entry No. 3), and Brief for Interest Party/Appellees Janis Lowe and Alan Taylor (Docket Entry No. 7). The court has carefully considered the parties' briefs, the record, and all the facts and circumstances, and concludes that the Bankruptcy Court's Judgment should be affirmed.

---

[1]Judgment, Record 76 included in Docket Entry No. 2.  Future references to the Record in this Memorandum Opinion and Order are to the items included in the Record on Appeal contained in Docket Entry No. 2.

## I.  <u>Factual Background</u>

Antelope is a company formed in 2001 and incorporated in 2002 that produces mobile modular computers.  The technology underlying the computers is patented by IBM.  Antelope has a license agreement with IBM that required a payment of $500,000 and funds to operate the company.  When the original owners of Antelope -- Ken Geyer, Anna Cole, Gary Newton, Tom Scott, and David Witt -- encountered difficulty raising funds to execute the IBM license agreement, they worked with Ivan Cardenas and Alan Taylor to relocate much of Antelope's operations to Switzerland in order to obtain a bank loan guaranteed by the Swiss government.  ATI Swiss was formed as a subsidiary of Antelope for this purpose.  In addition, Antelope initiated a $1 million share offering to new investors for the purpose of raising equity needed to qualify for the Swiss-government guaranteed bank loan.  When Antelope and ATI Swiss had raised the requisite equity, ATI Swiss obtained a $3 million bank loan, $500,000 of which was used to acquire the IBM license.  The $500,000 payment to IBM consisted of a license fee of $325,000 and a prepayment of royalties of $175,000.  In exchange for the license agreement, IBM provided Antelope technical documentation needed to produce modular computers.  Once Antelope received the technical documentation, Antelope found the IBM technology deficient and hired European engineers to help improve IBM's technology.[2]

---

[2]Debtor's First Amended and Modified Disclosure Statement for Debtor's Chapter 11 Plan of Reorganization, Record 26, pp. 10-12.

In the spring of 2004 Antelope was unable to make its first principal payment on the Swiss bank loan.  As part of a new fund-raising effort, Antelope's Chief Executive Officer (CEO), Alan Taylor, introduced Klaus Genssler, the representative of Scaltech International, N.V., to Antelope.  Scaltech offered Antelope a financing proposal, but on August 3, 2004, Antelope's board of directors voted not to accept the offer.  Although Scaltech subsequently offered Antelope a new financing proposal, Taylor attempted to obtain financing from another company, Xybernaut.[3]

At a meeting held on September 4, 2004, Antelope's board of directors accepted the resignations of CEO, Alan Taylor, and board members Kenneth A. Geyer and Thomas P. Scott, and named Thomas Lykos, Jr. as both a new board member and interim CEO.[4]

On November 14, 2004, Antelope's board of directors approved by a 4-3 vote, Lykos' proposal to file a Chapter 11 petition,[5] and resolved that the petition be filed immediately.[6]

In February of 2005 a group of minority shareholders, including Taylor, filed a shareholders' derivative action against

---

[3]Id. at 13.

[4]Minutes of Board of Directors Meeting of Antelope Technologies, Inc., included in Record 83 (marked Debtor's Exhibit 2).

[5]Minutes of Board of Directors Meeting of Antelope Technologies, Inc., included in Record 83 (marked Debtor's Exhibit 3).

[6]Resolution of the Directors of Antelope Technologies, Inc. (USA), Attachment 1 to Minutes of Board of Directors Meeting of Antelope Technologies, Inc., included in Record 83 (marked Debtor's Exhibit 3).

Antelope, Lykos, and others in the United States District Court for the Eastern District of Texas styled Janis Lowe, et al. v. Eltan, B.V., et al., Civil Action No. 9:05cv38.[7]

In November of 2006 Antelope initiated steps to acquire assets of MCC Computer Company LLC (MCC) using financing provided by Scaltech, and to effect the Chapter 11 filing that the board had approved on November 14, 2004.[8]

On February 14, 2007, Antelope filed a voluntary Chapter 11 petition, a proposed plan of reorganization, and a disclosure statement.[9]   Three minority shareholders objected to the plan: Stephen Guyer, Janis Lowe, and Alan Taylor.[10]   Despite the three objections, on November 21, 2007, the Bankruptcy Court entered an Order Confirming Debtor's Plan of Reorganization.[11]

On November 29, 2007, Lowe and Taylor filed a Notice of Appeal from the Order Confirming Debtor's Plan of Reorganization.[12]   On

---

[7]Evidentiary Hearing on Motion to Appoint Chapter 11 Trustee, Record 77, pp. 7 and 51.   See also Debtor's First Amended and Modified Disclosure Statement for Debtor's Chapter 11 Plan of Reorganization, Record 26, p. 15.

[8]Debtor's First Amended and Modified Disclosure Statement for Debtor's Chapter 11 Plan of Reorganization, Record 26, p. 15.

[9]See Debtor's Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code, Record 7, and Disclosure Statement for Debtor's Chapter 11 Plan of Reorganization, Record 8.

[10]See Objection to Approval of Disclosure Statement and Proposed Plan filed by C. Stephen Guyer, Record 10; and Objection to Disclosure Statement and proposed plan filed by Alan Taylor and Janis Lowe, Record 11.

[11]Order Confirming Debtor's Plan of Reorganization, Record 47.

[12]Notice of Appeal to District Court from Order Confirming Debtor's Chapter 11 Plan, Record 51.

August 12, 2008, and March 11, 2009, the United States District Court entered a Memorandum Order and Opinion vacating the Bankruptcy Court's Order Confirming Debtor's Plan of Reorganization and remanding to the Bankruptcy Court.[13]   Observing that Lykos "freely admitted" the Chapter 11 petition was filed to avoid effects of the shareholder derivative action filed in the Eastern District of Texas[14] and that the plan operated to release Antelope's management from claims asserted in that action,[15] the District Court concluded that the Chapter 11 petition did not appear to have been filed in good faith.   Accordingly, the District Court instructed the Bankruptcy Court to "(1) hold a hearing on whether to appoint a Chapter 11 Trustee; and (2) make findings of fact on whether the Plan was proposed in good faith."[16]

Antelope appealed the District Court's Order vacating the Plan to the Fifth Circuit, but the appeal was dismissed for lack of jurisdiction.[17]

On September 25, 2009, the Bankruptcy Court held an evidentiary hearing on the motion to appoint a Chapter 11 trustee filed by Lowe and Taylor.[18]   Taylor testified that following his

---

[13]Memorandum Order and Opinion, Records 66 and 67.

[14]Id. at 11.

[15]Id. at 6 and 12.

[16]Id. at 15.

[17]In re Antelope Technologies, Inc., 326 Fed. Appx. 304, 2009 WL 1560017 (5th Cir. June 2, 2009).

[18]Evidentiary Hearing on Motion to Appoint Chapter 11 Trustee, Record 77.

resignation as CEO he had no further relationship with Antelope as an officer,[19] he and other minority shareholders had filed a shareholder derivative action in the Eastern District of Texas under Civil Action Number 9:05-CV-38,[20] and the disclosure statement included a description of that derivative shareholder action.[21]

On November 4, 2009, the Bankruptcy Court held an evidentiary show cause hearing to determine why this case should not be dismissed in light of the concerns expressed by the District Court that Antelope's Chapter 11 petition had not been filed in good faith.[22] Lykos testified that when Taylor resigned in September of 2004 Antelope lacked funding, Antelope's compensation package for management was excessive, and Antelope was in default on a $3 million loan that it had no ability to repay.[23] Lykos also testi-fied that in February of 2007, when Antelope filed its Chapter 11 petition, the shareholder derivative action pending in the Eastern District of Texas impeded Antelope from attracting capital investment, and that the bankruptcy filing was intended to protect Antelope's one viable asset (an IBM license) to get all the

---

[19]Id. at 19.

[20]Id. at 7.

[21]Id. at 9.  See also Debtor's First Amended and Modified Disclosure Statement for Debtor's Chapter 11 Plan of Reorganization, Record 26, p. 15 ("Lowe v. Eltan" lawsuit).

[22]Show Cause Hearing, Record 78.

[23]Id. at 11-14.

technology needed under one roof, and to deal with all the creditors of both Antelope and MCC on a combined basis.[24]

On January 7, 2010, the Bankruptcy Court issued a final Judgment dismissing Antelope's Chapter 11 petition,[25] and a Memorandum Opinion with findings of facts and conclusions of law explaining the reasons for that dismissal.[26]

## II.  **Standard of Review**

A district court has jurisdiction to hear an appeal from a bankruptcy court's final judgment or order.  See 28 U.S.C. § 158(a).  The Bankruptcy Court's findings of fact are reviewed under the "clearly erroneous" standard.  In re Perry, 345 F.3d 303, 309 (5th Cir. 2003).  The "clearly erroneous" standard allows this court to reverse the Bankruptcy Court's findings of fact "only if left with 'the definite and firm conviction that a mistake has been committed.'"  Id. (quoting In re Dennis, 330 F.3d 696, 701 (5th Cir. 2003)).  The Bankruptcy Court's conclusions of law, conclusions on mixed questions of law and fact, and conclusions on application of the law to the facts are reviewed de novo.  In re United States Brass Corp., 171 F.3d 1016, 1021 (5th Cir. 1999).[27]

---

[24]Id. at 12–13 and 15.

[25]Judgment, Record 76.

[26]Memorandum Opinion, Record 75.  See also In re Antelope Technologies, Inc., 2010 WL 104556 (Bankr. S.D. Tex. 2010).

[27]See Brief of Debtor-Appellant, Docket Entry No. 3, p. 3 ("It is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination (continued...)

-7-

### III.  <u>Analysis</u>

Antelope argues that the Bankruptcy Court erred when it found

that Antelope

> filed the petition for the primary purpose of obtaining
> leverage in the shareholder litigation, not for the
> Debtor's financial reorganization or in response to a
> particular financial crisis.  The Court's findings are
> completely devoid of minimum evidentiary support
> displaying some hue of credibility and bear no rational
> relationship to the supportive evidentiary data adduced
> at the motion to appoint Chapter 11 trustee and show
> cause hearings held on September 24, 2009 and November 4,
> 2009, respectively, and prior hearings before the
> bankruptcy court, evidence offered that resulted in the
> November, 2007 order of confirmation and the bankruptcy
> court's finding that the Chapter 11 plan had been filed
> in good faith.  Accordingly, its findings were clearly
> erroneous and should be set aside and the judgment
> dismissing the case should be reversed.[28]

Appellees, Lowe and Taylor, argue that the Bankruptcy Court's

judgment should be affirmed because

> [t]he Bankruptcy Court's decision was based on evidence
> presented by Antelope, the Appellant, which clearly
> showed that Antelope filed the Bankruptcy primarily to
> gain an unfair advantage in the Shareholder Litigation
> and not for financial reorganization.  In reaching its
> decision, the Bankruptcy Court reviewed the totality of
> the circumstances, including a review of the proposed
> Chapter [11] plan, the testimony and the events in the
> bankruptcy.  Appellant argues that there was no evidence
> to support the decision of the Bankruptcy Court, which is
> far from the truth.  Antelope's plan was brought in bad
> faith with the sole goals of ousting minority

---

[27](...continued)
either is completely devoid of minimum evidentiary support
displaying some hue of credibility or bears no rational
relationship to the supportive evidentiary data.  <u>Hoots v.
Pennsylvania</u>, 703 F.2d 722, 725 (3d Cir. 1973).").

[28]<u>Id.</u> at 9-10.

shareholders and eliminat[ing] the liability of the
present insiders of Antelope.  The testimony of Lykos at
the confirmation hearing, the 341 meeting of the
creditors, and the show cause hearing, Antelope's
exhibits presented at the Show Cause hearing, the review
of the Shareholder Complaint and its docket, the review
of the Chapter [11] Plan, the bankruptcy docket, and
events in the Bankruptcy provided enough evidence to
support the Bankruptcy Court's findings, that Antelope
was using the bankruptcy process merely to obtain an
unfair advantage in the Shareholder Litigation.  The
Bankruptcy Court's decision was not clearly erroneous;
therefore, it should not be disturbed.[29]

**A.   Applicable Law**

In support of its decision to dismiss Antelope's Chapter 11

petition <u>sua sponte</u>, the Bankruptcy Court cited § 1112(b) of the

Bankruptcy Code,[30] and <u>In re Starmark Clinics, LP</u>, 388 B.R. 729

(Bankr. S.D. Tex. 2008).[31]  Although § 1112(b) does not expressly

---

[29]Brief for Interest Party/Appellees Janis Lowe and Alan
Taylor, Docket Entry No. 7, p. 15.

[30]Section 1112 of the Bankruptcy Code provides:

Except as provided in paragraph (2) of this subsection,
subsection (c) of this section, and section 1104(a)(3),
on request of a party in interest, and after notice and
a hearing, absent unusual circumstances specifically
identified by the court that establish that the requested
conversion or dismissal is not in the best interests of
creditors and the estate, the court shall convert a case
under this chapter to a case under chapter 7 or dismiss
a case under this chapter, whichever is in the best
interests of creditors and the estate, if the movant
establishes cause.

11 U.S.C. § 1112(b)(1).

[31]Memorandum Opinion, Record 75.   <u>See also</u> <u>In re Antelope
Technologies, Inc.</u>, 2010 WL 104556 (Bankr. S.D. Tex. 2010).

provide Bankruptcy Courts with the authority to dismiss Chapter 11 petitions <u>sua sponte</u>, neither party disputes the Bankruptcy Court's assertion that § 1112(b) authorizes <u>sua sponte</u> dismissals for cause.  In <u>Starmark</u> the Bankruptcy Court concluded not only that it could dismiss a Chapter 11 petition <u>sua sponte</u> for cause, but also that cause to dismiss exists when a Chapter 11 petition is filed to gain an unfair advantage in another lawsuit.  388 B.R. at 735-36 (citing <u>Argus Group 1700, Inc. v. Steinman (In re Steinman)</u>, 206 B.R. 757, 764-765 (E.D. Pa. 1997) (recognizing that evidence of bad faith and/or lack of good faith in filing a bankruptcy petition establishes the requisite "cause" for dismissal under § 1112(b), and that filing a bankruptcy petition to gain advantage in other lawsuit constituted cause for dismissal)).

The parties agree that the purpose of Chapter 11 of the Bankruptcy Code is to assist financially distressed businesses by providing breathing space to reorganize.[32]  <u>See</u> <u>Lemelle v. Universal Manufacturing Corp.</u>, 18 F.3d 1268, 1272 (5th Cir. 1994) ("The purpose of Chapter 11 reorganization is 'to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state.'") (quoting <u>Little</u>

---

[32]<u>See</u> Brief of Debtor-Appellant, Docket Entry No. 3, p. 10 (citing <u>In re Dolton Lodge Trust No. 35188</u>, 22 B.R. 918, 922 (Bankr. N.D. Ill. 1982); Brief for Interest Party/Appellees Janis Lowe and Alan Taylor, Docket Entry No. 7, p. 17 ("Antelope correctly states that the purpose of Chapter 11 is to assist financially distressed businesses by providing them with breathing space to reorganize.").

Creek Development Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.), 779 F.2d 1068, 1073 (5th Cir. 1986)).  Although the Bankruptcy Code does not expressly require petitions to be filed in good faith, courts, including the Fifth Circuit, have recognized an implicit good faith requirement for filing a bankruptcy petition to prevent fraud or abuse of the bankruptcy process.  See Little Creek, 779 F.2d at 1072 ("[E]very bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution and confirmation of bankruptcy proceedings.").  See also Carolin Corporation v. Miller, 886 F.2d 693, 698 (4th Cir. 1989) (requirement of good faith implicit in statutory language and legislative history of § 1112(b)); In re Trident Associates Ltd. Partnership, 52 F.3d 127, 131 (6th Cir.), cert. denied, 116 S.Ct. 188 (1995) (upholding Bankruptcy Court's decision to lift automatic stay and dismiss petition because petitioner filed in bad faith to isolate insolvent property and its creditors on the eve of foreclosure).  In Little Creek, 779 F.2d 1072-74, the Fifth Circuit explained that Bankruptcy Courts are responsible for enforcing a standard of good faith and have the ability to dismiss petitions sua sponte if after examining all the particular facts and circumstances they conclude that a petition was not filed in good faith.  See Matter of Atlas Supply Corp., 857 F.2d 1061 (5th Cir. 1988) (when determining whether a petition should be dismissed for cause, courts consider the totality of the circumstances).

-11-

**B.   Analysis**

Following two evidentiary hearings, one on the motion to
appoint a Chapter 11 trustee held on September 25, 2009, and one on
the Order to Show Cause held on November 4, 2009, the Bankruptcy
Court issued a Memorandum Opinion concluding that

> it appears clear that, although Lykos (and perhaps
> Genssler) saw an opportunity for growth of the Debtor's
> business through recapitalization, Debtor's near-term
> capital needs were not so urgent as to cause the filing
> of a Chapter 11 petition at the time Debtor's board
> authorized and directed Lykos to file it (Debtor's
> Exhibit 3), or for more than two years thereafter.
> Indeed, in light of the passage of two years after that
> resolution was approved (itself passed after the
> resignation or ouster of previous management, including
> Taylor, the former CEO), the proposing on the petition
> date of a plan by which Genssler was to obtain a release
> of the shareholder litigation and retain control of
> Debtor, and Lykos' admission that the upcoming trial
> prompted the filing, the court infers that Debtor filed
> the petition in the instant case for the primary purpose
> of obtaining leverage in the shareholder litigation, not
> for the Debtor's financial reorganization or in response
> to a particular financial crisis.   There is litigation
> pending in the United States District Court for the
> Eastern District of Texas addressing rights the minority
> shareholders believe have been infringed.   In light of
> the filing of the bankruptcy petition to gain an unfair
> advantage in the shareholder litigation, the absence of
> any clear need for financial reorganization, and the
> assertions that the management who ultimately filed the
> bankruptcy petition gained control by illegal or
> unethical means, which assertions can be dealt with in
> the pending shareholder litigation, the court concludes,
> on the totality of the circumstances, that the above
> captioned Chapter 11 case should be dismissed.[33]

The Bankruptcy Court based its decision to dismiss Antelope's
Chapter 11 petition on its conclusion that Antelope's primary

---

[33]Memorandum Opinion, Record 75, pp. 8-9.   See also In re
Antelope Technologies, Inc., 2010 WL 104556, *3 (Bankr. S.D. Tex.
2010).

purpose for filing the Chapter 11 petition was not to reorganize or respond to a financial crisis but, instead, to gain unfair advantage in the shareholder derivative action pending in the Eastern District of Texas.  The Bankruptcy Court based this conclusion on the terms of the proposed plan, which release Genssler, Lykos, and other Antelope insiders from the claims asserted against them in the shareholder derivative action, and on the absence of evidence showing that Antelope had a clear need for financial reorganization.  For the reasons explained below, the court concludes that the findings of fact on which the Bankruptcy Court based its decision to dismiss Antelope's Chapter 11 petition were not clearly erroneous.

    1.   <u>No Clear Need for Financial Reorganization</u>

The Bankruptcy Court concluded that

> although Lykos (and perhaps Genssler) saw an opportunity
> for growth of the Debtor's business through
> recapitalization, Debtor's near-term capital needs were
> not so urgent as to cause the filing of a Chapter 11
> petition at the time Debtor's board authorized and
> directed Lykos to file it (Debtor's Exhibit 3), or for
> more than two years thereafter.[34]

This conclusion is based on the Bankruptcy Court's findings of fact that on November 14, 2004, Antelope's board of directors resolved to file a Chapter 11 petition immediately and authorized Lykos to

---

[34]Memorandum Opinion, Record 75, p. 8.  <u>See also</u> <u>In re Antelope Technologies, Inc.</u>, 2010 WL 104556, *3 (Bankr. S.D. Tex. 2010).

-13-

do so, but that Antelope delayed for over two years and did not file the petition until February 14, 2007.[35]

Antelope does not dispute these individual fact-findings of the Bankruptcy Court, but, instead, argues that the Bankruptcy Court erred by concluding that Antelope had no clear need for financial reorganization. In support of this argument Antelope cites Lykos' testimony (1) that when Taylor resigned in September of 2004 Antelope suffered from a lack of income, an excessive compensation package for former management, and an inability to obtain financing and/or repay a $3 million loan,[36] (2) that when Antelope filed its Chapter 11 petition in February of 2007, IBM was attempting to terminate Antelope's IBM license,[37] and (3) that the shareholder derivative action pending in the Eastern District of Texas impeded Antelope from attracting capital investment.[38] Antelope argues that

---

[35]Memorandum Opinion, Record 75, p. 5. See also In re Antelope Technologies, Inc., 2010 WL 104556, *2 (Bankr. S.D. Tex. 2010); Lykos' testimony at the Show Cause Hearing, Record 78, pp. 9-15; Minutes of Board of Directors Meeting of Antelope Technologies, Inc., and Resolution of the Directors of Antelope Technologies, Inc. (USA), Attachment 1 to Minutes of Board of Directors Meeting of Antelope Technologies, Inc., included in Record 83 (marked Debtor's Exhibit 3).

[36]Brief of Debtor-Appellant, Docket Entry No. 3, p. 6 (citing Record 78, pp. 11-12), and pp. 10-11 (citing Rec. 77, pp. 27-28 and Rec. 78, p. 40).

[37]Id. at 6, 12, and 21 (citing Show Cause Hearing, Record 78, pp. 10, 12-13).

[38]Id. at 6-7 and 11 (citing Show Cause Hearing, Record 78, pp. 13-14).

-14-

> [i]n a report by Lykos as interim CEO to the Debtor's
> Board of Directors and shareholders offered into evidence
> at the show cause hearing, a recommendation was made that
> existing shareholders were in the best position to
> recapitalize Debtor. *See Rec. 78, p. 8.*
>
> At no time did any shareholder express a willingness
> to infuse additional capital into Debtor either prior to
> or subsequent to the Board of Directors or shareholder
> vote approving a Chapter 11 filing. *See Rec. 7, 8.*[39]

The evidence that Antelope cites in support of its argument that
the Bankruptcy Court erred by concluding that Antelope had no clear
need for financial reorganization shows that there may have existed
"an opportunity for growth of the Debtor's business through
recapitalization,"[40] but does not show that Antelope's near-term
capital needs were so urgent as to cause the filing of a Chapter 11
petition either when its board authorized and directed Lykos to do
so -- i.e., in November of 2004 -- or when the petition was filed
-- i.e., in February of 2007.

(a)  Antelope's Financial Condition in 2004

The undisputed fact that Antelope delayed over two years from
November of 2004 when its board approved the Chapter 11 filing
until February of 2007 when Antelope effected the filing strongly
supports the Bankruptcy Court's conclusion that Antelope had no
clear need for financial reorganization under Chapter 11 when
Antelope's board of directors approved that filing.

---

[39]Id. at 11.

[40]Memorandum Opinion, Record 75, p. 8. *See also In re Antelope
Technologies, Inc.*, 2010 WL 104556, *3 (Bankr. S.D. Tex. 2010).

(b)   IBM License

Antelope contends that immediately before it filed the Chapter 11 petition IBM was attempting to terminate Antelope's license; and had Antelope been liquidated, the IBM license would have been lost.[41]  But Antelope has not cited any evidence showing that the need to protect the IBM license was considered by its board of directors as a reason for authorizing the bankruptcy filing in 2004, or that the Chapter 11 filing in 2007 had any effect on the status of Antelope's IBM license.  Antelope's contention that the bankruptcy filing was prompted by a need to protect its IBM license is contradicted by that part of the Disclosure Statement subtitled "Events Leading to the Commencement of the Chapter 11 Case" that Antelope filed together with its petition and proposed plan on February 14, 2007.  There, Antelope states that

> A[ntelope] T[echnologies] I[nc.] now owns all of the modular computer assets, including improvements of the computer to make it a viable product. **The IBM License is also secure in the hands of Antelope.**  However, Antelope still has significant debts from the pre 2005 operations under the original Antelope management team and in preparing with its sole secured lender Scaltech a comprehensive business and reorganization plan, it became clear that a formal reorganization under the Bankruptcy code as approved in 2004 would be required.[42]

---

[41]Brief of Debtor-Appellant, Docket Entry No. 3, p. 12 (citing Show Cause Hearing, Record 78, pp. 10 and 21).

[42]Debtor's Disclosure Statement for Debtor's Chapter 11 Plan of Reorganization, Record 8, p. 16 (emphasis added).  See also Debtor's First Amended and Modified Disclosure Statement for Debtor's Chapter 11 Plan of Reorganization, Record 26, p. 16.

-16-

Antelope's recognition in the Disclosure Statement that "[t]he IBM License is . . . secure in the hands of Antelope," contradicts Antelope's argument that the Chapter 11 filing was needed to protect its IBM license.

(c)   Ability to Attract New Capital

Antelope contends that the shareholder derivative action pending in the Eastern District of Texas impeded it from attracting essential capital investment.[43]  But in that part of the Disclosure Statement subtitled "Events Leading to the Commencement of the Chapter 11 Case" that Antelope filed together with its petition and proposed plan on February 14, 2007, it fails to mention the shareholder derivative action.  Moreover, Antelope acknowledged therein that during the three months immediately preceding the Chapter 11 filing, "a secured loan in the amount of $395,000 was provided to Antelope."[44]  The acknowledgment in the Disclosure Statement that only months before the bankruptcy filing "a secured loan in the amount of $395,000 was provided to Antelope" contradicts Antelope's argument that it needed the Chapter 11 filing to attract essential capital investment.

---

[43]Brief of Debtor-Appellant, Docket Entry No. 3, pp. 6-7 and 11 (citing Show Cause Hearing, Record 78, pp. 13-14).

[44]Debtor's Disclosure Statement for Debtor's Chapter 11 Plan of Reorganization, Record 8, p. 16.  See also Debtor's First Amended and Modified Disclosure Statement for Debtor's Chapter 11 Plan of Reorganization, Record 26, p. 15 (same).

-17-

(d)  Conclusions

Antelope disputes the Bankruptcy Court's conclusion that it had no clear need for financial reorganization, but fails to point to any evidence from which the Bankruptcy Court could reasonably have concluded that its near-term capital needs were so urgent as to cause the filing of a Chapter 11 petition either when its board authorized and directed Lykos to do so in November of 2004 or when the petition was filed in February of 2007.  Accordingly, the court concludes that the findings of fact on which the Bankruptcy Court based its conclusion that Antelope had no clear need for financial reorganization are neither devoid of evidentiary support nor clearly erroneous.

2.  <u>Advantage in Shareholder Derivative Action</u>

The Bankruptcy Court concluded that

> in light of the passage of two years after that resolution was approved (itself passed after the resignation or ouster of previous management, including Taylor, the former CEO), the proposing on the petition date of a plan by which Genssler was to obtain a release of the shareholder litigation and retain control of Debtor, and Lykos' admission that the upcoming trial prompted the filing, the court infers that Debtor filed the petition in the instant case for the primary purpose of obtaining leverage in the shareholder litigation, not for the Debtor's financial reorganization or in response to a particular financial crisis.[45]

These conclusions are based on the Bankruptcy Court's findings of fact regarding both the terms of the plan and the District Court's

---

[45]Memorandum Opinion, Record 75, p. 8.  <u>See also</u> <u>In re Antelope Technologies, Inc.</u>, 2010 WL 104556, *3 (Bankr. S.D. Tex. 2010).

-18-

observations that "Genssler is the owner of Scaltech, and that Lykos was Genssler's attorney,"[46] Lykos "'admitted that the upcoming Shareholder Litigation trial prompted the filing of the Chapter 11 petition,'"[47] and "Genssler 'was paid in full through Scaltech, and avoided the derivative lawsuit.'"[48]

Antelope argues that the Bankruptcy Court erred by concluding that the Chapter 11 petition was filed to gain leverage in the shareholder litigation and not for Antelope's financial reorganization or in response to a particular financial crisis.  In support of this argument Antelope contends that the Bankruptcy Court's "only 'factual' justification [for its conclusions] is defective in and of itself because it relied on 'facts' cited by an appellate court that confused Lowe and Taylor's unproven allegations and speculation with fact."[49]  Antelope asserts that  Lykos testified at the show cause hearing that

> the Derivative Shareholder Litigation was a meritless lawsuit brought by a small minority of Debtor's shareholders, some of whom had created the situation that

---

[46]Id. at 7 (citing Docket Entry No. 21 in Case No. 4:07cv4135, at p. 2).  See also In re Antelope Technologies, Inc., 2010 WL 104556, *2 (Bankr. S.D. Tex. 2010).

[47]Id. at 7 (citing Docket Entry No. 21 in Case No. 4:07cv4135, at p. 4).  See also In re Antelope Technologies, Inc., 2010 WL 104556, *2 (Bankr. S.D. Tex. 2010).

[48]Id. at 6-7 (citing Docket Entry No. 21 in Case No. 4:07cv4135, at p. 6).  See also In re Antelope Technologies, Inc., 2010 WL 104556, *2 (Bankr. S.D. Tex. 2010).

[49]Brief of Debtor-Appellant, Docket Entry No. 3, p. 13 (citing Memorandum Order and Opinion, Records 66 and 67).

led to Debtor's bankruptcy.  *See Rec. 78, p. 53.*  Lowe and Taylor presented no credible evidence whatsoever that the bankruptcy proceeding had been filed to gain an advantage in a two party dispute.  *See Rec. 78.*  To the contrary, Debtor presented compelling evidence supporting its good faith filing of the bankruptcy proceeding in this case.  *See Rec. 78.*[50]

    (a)  Advantage to Genssler and Lykos

Antelope argues that the Bankruptcy Court's findings that Genssler was paid in full through Scaltech and avoided the derivative lawsuit, that Genssler is the owner of Scaltech, and that Lykos was Genssler's attorney cannot be "findings of fact" because they are not based on evidence but, instead, on unproven allegations that the District Court mistook as facts.  The District Court's Memorandum Order and Opinion cites as the source of these findings the Order Confirming the Debtor's Plan of Reorganization, Exhibit A to which was Antelope's Plan.[51]

The Antelope Plan identifies Scaltech as the only secured creditor and provides for Scaltech to be fully compensated and released from liability for any claims related to Antelope and/or its bankruptcy including, presumably, any claims that may have been asserted against Scaltech in the shareholder derivative action.[52]

---

[50]*Id.* at 7 (citing Show Cause Hearing, Record 78, p. 7).

[51]Memorandum Order and Opinion, Records 66 and 67, p. 6 (citing Docket Entry No. 13, Exhibit 47, Order Confirming Debtor's Plan of Reorganization (Record 47 in this action)).

[52]Debtor's Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code, Exhibit A attached to Record 47,
(continued...)

The Plan provides for two classes of unsecured creditors to be paid the cash equivalent of 5% of their estimated claims,[53] and for the claims of equity shareholders such as Lowe and Taylor to be canceled.[54]  The Plan contains provisions that release and exculpate all directors, officers, employees, members, partners, professionals, and agents of both Antelope and Scaltech from any claims related to Antelope and/or its bankruptcy action;[55] and the list of Senior Management included in Debtor's First Amended and Modified Disclosure Statement identifies Genssler as Antelope's CEO and Lykos as Antelope's President and General Counsel.[56]  Because the Plan provides (1) for Scaltech to be paid in full; (2) for claims asserted against the directors, officers, and employees of Antelope and Scaltech, and against Scaltech itself, to be released; and (3) for these parties to be exculpated, the Bankruptcy Court's findings of fact that Scaltech would be paid in full and that Genssler would avoid the shareholder derivative lawsuit were not devoid of evidentiary support but, instead, were based on evidence

---

[52](...continued)
p. 10, § 5.2 (providing, inter alia, "[t]he full amount of the Scaltech Pre-Petition Claim owing as of the Effective Date shall be an Allowed Secured Claim pursuant to this Plan, and shall be satisfied as stated below").

[53]Id. at 11 § 5.4.

[54]Id. § 5.5.

[55]Id. §§ 14.4 ("Releases"), and 14.5 ("Exculpation of Post-Petition Board, Officers, Agents and Scaltech").

[56]Exhibit C attached to Record 26.

properly presented to the Bankruptcy Court in Antelope's disclosure statement and previously confirmed plan. Accordingly, the Bankruptcy Court's findings of fact that Scaltech would be paid in full and that Genssler would avoid the shareholder derivative lawsuit are not clearly erroneous. Whether Genssler owns Scaltech and whether Lykos was Genssler's attorney are findings that are not needed to support the Bankruptcy Court's conclusion that the Chapter 11 petition was filed to gain advantage in the shareholder derivative action.

> (b)   Admission that Shareholder Litigation Prompted Chapter 11 Filing

Antelope argues that the Bankruptcy Court's finding that Lykos admitted that the upcoming Shareholder Litigation trial prompted the filing of the Chapter 11 petition is not based on evidence and, therefore, cannot be a finding of fact. In support of its statement that Lykos admitted that the upcoming Shareholder Litigation trial prompted the filing of the Chapter 11 petition, the District Court cited Lykos' testimony at the § 341 meeting of creditors.[57] Appellees have designated the transcript from the § 341 meeting as Record 84 in this action.[58] At the § 341 meeting

---

[57]Memorandum Order and Opinion, Records 66 and 67, p. 4 (citing Docket Entry No. 13, Exhibit 34, Transcript for the § 341 Hearing held on April 5, 2007).

[58]Interest Parties/Appellees Janis Lowe's and Alan Taylor's Supplemental Designation of Items to Be Included in the Record, Docket Entry No. 6.

Lykos testified that the shareholder derivative action pending in the Eastern District of Texas was a reason for filing the Chapter 11 petition:

Mr. Sharp:      . . . the bankruptcy was filed in February of 2007. And the primary reason, I think what you testified, is that you were unable to meet payroll debt, and you're making attempts to resolve a lawsuit.

Are we referring to lawsuits in the plural, or just lawsuit that's the number -- the number one -- the Harris County lawsuit that's listed on the -- your statement of financial affairs page 834.

Mr. Lykos:      I was referring to the lawsuit in Lufkin, Texas.

                        . . .

Mr. Sharp:      . . . When we're talking about the reason for the bankruptcy, you stated that attempts to resolve the lawsuit. Is that also including the Lufkin lawsuit?

Mr. Lykos:      Yeah. I'm not sure I really understand your question.

Mr. Sharp:      For the filing of the bankruptcy. Correct?

Mr. Lykos:      Right. Yeah. No doubt about it.

Mr. Sharp:      Okay.

Mr. Lykos:      It's a derivative lawsuit. The only claims that I see in the entire lawsuit as it's been explained to me by all the lawyers is derivative claims, which would be assets owned by Antelope, not individuals.[59]

---

[59]Section 341 Hearing, Record 84 attached to Docket Entry No. 6, p. 40:15-24 and p. 41:10-23.

Because this testimony provided by Lykos at the § 341 meeting
constitutes evidentiary support for the District Court's statement
that Lykos admitted the shareholder derivative action prompted the
Chapter 11 filing,[60] the Bankruptcy Court's reliance on this
statement in the District Court's Memorandum Order and Opinion does
not lack evidentiary support.  Alternatively, the court concludes
that testimony provided by Lykos at the show cause hearing
conducted by the Bankruptcy Court on November 4, 2009, also
provides evidentiary support for the Bankruptcy Court's finding
that Lykos admitted the shareholder derivative action prompted the
Chapter 11 filing.  At the show cause hearing Lykos explained why
the shareholder derivative action pending in the Eastern District
of Texas was a reason for the bankruptcy filing:

> Q:   With regard to the timeframe immediately prior to
>      the filing of the bankruptcy, there was litigation
>      pending in the Eastern District of Texas that had
>      been brought by some of the disgruntled
>      shareholders as, effectively, a third-party -- the
>      company theoretically was a third-party
>      beneficiary, the owner of the cause of action.
>
>      Is that correct?
>
> A.   It was a derivative lawsuit.
>
> Q.   That's correct.
>
> A.   Yes.

---

[60]See Memorandum Order and Opinion, Records 66 and 67, p. 4
("Antelope's CEO, Lykos, has admitted that the upcoming Shareholder
Litigation trial prompted the filing of the Chapter 11 petition.
Dkt. 13, Ex. 34.").

Q.   And that existed on the books.  Did that stand as a
     problem for obtaining any investment into Antelope?

A.   Yes.

Q.   Why?

A.   Well the -- especially once the bankruptcy had been
     filed, the people who would manage the company, and
     who ultimately would invest in the company, were
     the people who were party to that lawsuit and [it]
     would be hard to attract money into that company
     while the company was suing the management
     responsible for bringing the company out of
     bankruptcy.[61]

Antelope's Plan would release claims asserted against "the
people who would manage the company," <u>e.g.</u>, Antelope's current CEO,
Genssler, and current president and general counsel, Lykos.[62]
Lykos' testimony at the show cause hearing that the shareholder
derivative action impeded Antelope's ability to attract capital
investment because

**the people who would manage the company,** and who
ultimately would invest in the company, were the people
who were party to that lawsuit and [it] would be hard to
attract money into that company while the company was
suing the management responsible for bringing the company
out of bankruptcy,[63]

therefore strongly supports the Bankruptcy Court's conclusion that
the Chapter 11 petition was filed to gain an unfair advantage in
the shareholder derivative action pending in the Eastern District
of Texas.  The Bankruptcy Court could also reasonably have inferred

---

[61]Show Cause Hearing, Record 78, pp. 13:15 - 14:10.

[62]<u>See</u> § III.B.2(a), above.

[63]Show Cause Hearing, Record 78, p. 14:6-10 (emphasis added).

from this testimony that Lykos admitted the shareholder derivative action prompted the filing of the Chapter 11 petition.   Indeed, Antelope appears to have drawn the same inference since in its brief to this court, Antelope cites this same Lykos testimony as evidence that the Chapter 11 filing was justified because the shareholder derivative action impeded its ability to attract capital investment.[64]

          (c)   Conclusions

Antelope disputes the Bankruptcy Court's conclusion that the Chapter 11 petition was filed to gain leverage in the shareholder derivative action pending in the Eastern District of Texas, but fails to point to any evidence from which the Bankruptcy Court could reasonably have concluded otherwise.   Accordingly, the court concludes that the findings of fact on which the Bankruptcy Court based its conclusion that the Chapter 11 petition was filed to gain an unfair advantage in the shareholder derivative action pending in the Eastern District of Texas are neither devoid of evidentiary support nor clearly erroneous.

**C.   Conclusions**

For the reasons explained above, the court concludes that the Bankruptcy Court's findings of fact are not devoid of evidentiary

---

[64]See Brief of Debtor-Appellant, Docket Entry No. 3, pp. 6-7 and 11 (citing Show Cause Hearing, Record 78, pp. 13-14); and § III.B.1(c), above.

support but are rationally related to the supportive evidence contained in the record and developed at the hearings held before the Bankruptcy Court.  Accordingly, the court concludes that the Bankruptcy Court's findings of fact are not clearly erroneous, and that the Bankruptcy Court's conclusion that Antelope's Chapter 11 petition should be dismissed because the petition was not filed for the purpose of Antelope's financial reorganization or in response to a particular financial crisis but, instead, to gain unfair advantage in the shareholder derivative action pending in the Eastern District of Texas, should be affirmed.

## IV.  Order

The Bankruptcy Court's final Judgment dismissing Antelope's Chapter 11 petition is **AFFIRMED**.

**SIGNED** at Houston, Texas, on this the 21st day of July, 2010.

SIM LAKE
UNITED STATES DISTRICT JUDGE